PEOPLE v. STATKIEWICZ.

1. HOMICIDE—VERDICT OF FIRST DEGREE MURDER NOT AGAINST WEIGHT OF EVIDENCE.

Where, in prosecution for murder by shooting, the testimony was subject to fair conclusion that there was no justification, and that defendant had ample time to form intent to kill or seriously injure deceased, verdict of murder in first degree was not against great weight of evidence because of lack of evidence of malice or premeditation, since deliberate and unjustifiable use of deadly weapon implies malice.

2. CRIMINAL LAW—HOMICIDE—INSTRUCTION.

In prosecution for murder, instruction that, "if respondent had, previous to the killing of A., determined to kill him or to inflict upon him some great bodily harm less than the crime of murder, *which might reasonably have been expected, from the nature of the weapon and the manner of its use*, to involve

serious consequences to the life of A., and, to carry out such intention, wilfully and deliberately killed him, he would be guilty of murder in the first degree,'' *held,* not open to objection that italicized words limited jury in determining guilt by excluding consideration of surrounding circumstances.

3. HOMICIDE—INSTRUCTION AS TO SELF-DEFENSE NOT CONTRADICTORY.
   Instruction in prosecution for murder presenting two rules of self-defense, one for use in case defendant was the aggressor, and the other in case he was not, *held,* not contradictory and confusing to the jury.

4. CRIMINAL LAW—MORE SPECIFIC INSTRUCTION SHOULD HAVE BEEN REQUESTED IF DESIRED.
   If more specific instruction as to right of self-defense had been desired, it should have been requested.

5. SAME—INSTRUCTION—SELF-DEFENSE—BURDEN OF PROOF.
   Instruction as to self-defense, which was immediately followed by other instruction that burden of proof of all such matters is upon the people, and that people's testimony must be such as to satisfy jury that killing was not done in self-defense, and which was also covered later by general instructions, *held,* not misleading as to burden of proof of self-defense.

6. SAME—INSTRUCTION AS TO SELF-DEFENSE NOT BELITTLING COUNSEL'S THEORY OR GOOD FAITH.
   Instruction urging jury to carefully scrutinize claim of self-defense; on the one hand that defendant should not be punished if he so acted, and on the other hand that it be not made a means to defeat the ends of justice if it were unfounded, did not belittle the theory of counsel or imply that plea was not made in good faith.

7. WITNESSES—CROSS-EXAMINATION—ABUSE OF DISCRETION.
   Permitting cross-examination of defendant charged with murder in connection with his having been a witness in prior murder case, and also having been arrested in Chicago, where he went after shooting deceased, was not abuse of discretion, where it was admitted as bearing upon his credibility, and was not unduly extended.

Error to Oakland; Doty (Frank L.), J. Submitted April 11, 1929. (Docket No. 118, Calendar No. 34,163.) Decided June 3, 1929.

Vincent Statkiewicz was convicted of murder in first degree and sentenced to life imprisonment. Affirmed.

*Walter E. Kelly* and *Frank J. Kane (Chawke & Sloan,* of counsel), for appellant.

*Wilber M. Brucker,* Attorney General, and *Norman C. Orr,* Prosecuting Attorney, for the people.

Fead, J. Defendant was convicted of murder in the first degree for shooting and killing Anthony Wasielewski on March 28, 1927, sentenced to life imprisonment, and brings error.

Defendant was 27 years of age and was born in Detroit. His sister Anna was married to Charles Wasielewski, brother of Anthony. About midnight the four returned from a neighbor's house to the home of Charles and Anna. Defendant had been drinking. He went to bed. A controversy arose between him and Charles, in the course of which Charles ordered defendant out of the house. Charles and Anna testified that this order came because defendant was swearing profusely in the presence of the children, and that Charles threatened to take defendant out and give him a beating if he did not stop swearing. Defendant said he was ordered out because Charles said he did not like him, and that Charles threatened to give him the beating of his life, calling on Anthony to be referee. Anna handed Charles the baby to prevent his fighting, and Charles handed it back. Defendant got up and dressed. He had a revolver in his coat pocket. Deceased stood nearby, with both hands in his hip pockets, and, according to the testimony of Charles and Anna, told and retold defendant that he could not "pack" the gun out of the house. Defendant testified decedent

said to him, "You ain't packing out of this house tonight," and, although defendant told him he had been ordered out, deceased repeated the assertion, moved closer, and finally came within two or three feet of defendant. Defendant told decedent not to come closer or he would shoot. Decedent whipped his right hand from his hip pocket, wheeled around, said "Shoot," or "Go ahead and shoot," or something similar, and defendant shot him, the bullet striking deceased in the leg, severing a large artery, and causing his death. Defendant said that as deceased whipped out his right hand, he, defendant, stepped back and the gun exploded; that he was trembling and nervous. He did not testify that he had shot in self-defense, nor that he deemed it necessary to shoot in order to protect his life or body. There was no evidence that deceased was armed, or that defendant thought he was. There had been no prior trouble between them. Anna testified that when they came back to her home she told defendant that decedent had said that, "If he gets my brother," he would kill defendant. Defendant said she told him to look out; "they will kill you."

Defendant contends the verdict was against the great weight of the evidence, and there was no testimony to sustain malice or premeditation to constitute murder in the first degree. The testimony of Charles and Anna strongly indicated that defendant was in an ugly frame of mind, and that deceased intended no more than to prevent defendant from taking the revolver with him for possible use in a fight with Charles, not to assault him. In view of defendant's failure to claim that he had been in fear of his life or body, or that he shot in self-defense, the testimony was subject to a fair conclusion that there was no justification for the shooting. A deliberate and

unjustifiable use of a deadly weapon implies malice. Defendant had warned deceased to keep away from him or he would shoot. He had ample time to form the intent to kill or seriously injure deceased. It was for the jury to say whether there was justification for the shooting and the intent with which it was done.

Read as a whole, the charge of the court was fair, correctly stated the law, and amply protected the rights of defendant. Defendant's counsel presented · no requests to charge, but his present attorneys now take exception to certain isolated portions of the instructions. Error was alleged upon that portion reading:

"If the respondent had, previous to the killing of Anthony Wasielewski, determined to kill him or to inflict upon him some great bodily harm less than the crime of murder, *which might reasonably have been expected, from the nature of the weapon and the manner of its use,* to involve serious consequences to the life of Anthony Wasielewski, and, to carry out such intention, wilfully and deliberately killed him, he would be guilty of murder in the first degree."

Counsel contend that the italicized words limited the jury in determining guilt by excluding consideration of surrounding circumstances. If limited in their scope, the words merely restricted determination of the character of the injury defendant intended to inflict, if he did not intend to kill, to consideration of the nature of the weapon and the manner of its use. They had no reference to malice, premeditation, or justification, the elements of which, with full discussion of intent, were elsewhere set out at length in the charge. Nor can we imagine that a jury would understand that the manner of use of a

weapon did not include all the circumstances surrounding its use and all the evidence bearing thereon, or that guilt was not to be determined from the whole testimony.

Defendant claims that the following instructions set up contradictory charges on self-defense and confused the jury:

"If he himself (defendant) was the aggressor in the conflict he cannot invoke the doctrine of self-defense as an excuse for the killing, unless he was, at that time, in immediate danger of losing his own life or suffering some grievous bodily injury and there was no retreat open for him and his only safety lay in shooting Anthony Wasielewski. Self-defense in proper cases is the right of every person but it will not justify the taking of a human life, unless the jurors shall be satisfied from the testimony: First, that the defendant was not the aggressor, in bringing on the difficulty, that is, that he was without fault; second, that there existed, at the time of the shooting, in his mind a present and impending necessity to shoot in order to save himself from death or some great bodily harm; third, that there must have been no way open whereby he could have retreated as it appeared to him at the time of the shooting to a place of safety and thus avoided the conflict. Unless you find that all three of these facts are established in this case, then the plea of self-defense fails."

The court thus presented two rules of self-defense, one for use in case the defendant was the aggressor, and the other in case he was not. They were not contradictory. The court later defined "aggressor" as follows:

"An aggressor is not necessarily a person who may strike the first blow in a personal encounter or make the first demonstration indicating an intent

to strike; but if a person with malice and hatred in his heart towards such a person seeks to provoke a difficulty either by acts or words, with the intent to induce such other person to strike the first blow or make the demonstration, in order to form a pretext to take his life, then the defendant could not avail himself of the right of self-defense."

In view of this definition, the first instruction on self-defense was more favorable to the defendant than he was entitled to. 30 C. J. p. 47.

Counsel conceded that the second instruction was correct in making the test of self-defense a matter of necessity existing in the mind of defendant. If a more specific instruction had been desired, it should have been requested.

Defendant contends, also, that the instruction threw the burden of proof of self-defense on him. It may bear that construction. But immediately following the quoted language, and in the same paragraph, the court further said:

"The burden of proof of all such matters is upon the people to show that the respondent is guilty of the offense charged and the people's testimony must be such as to satisfy the jurors that the killing was not done in self-defense. The burden is not on the defendant who makes the defense of self-defense to satisfy the jury of the truth of his claim."

The court also later covered the subject by general instructions, so that the jury could not have been misled as to the burden of proof of self-defense.

The court urged the jury to carefully scrutinize the claim of self-defense; on the one hand, that defendant should not be punished if he so acted, and, on the other hand, that the plea be not made a means to defeat the ends of justice if it were unfounded. The instruction did not belittle the theory of counsel, nor imply that the plea was not made in good faith.

Error is also assigned upon cross-examination of defendant by the prosecuting attorney in connection with his having been a witness in a prior murder case and also having been arrested in Chicago, where he went after shooting deceased. The court admitted the testimony as bearing upon the credibility of defendant. The examination was not unduly extended, and there was no abuse of discretion.

We find no error in the record, and conviction is affirmed.

NORTH, C. J., and FELLOWS, WIEST, CLARK, MC-DONALD, and SHARPE, J., concurred. POTTER, J., did not sit.